The plaintiff, Industrial Systems of Huntsville, Inc., appeals the granting of a motion for directed verdict on behalf of the defendant, The American National Bank of Huntsville.
Industrial Systems is a carpet and floor covering business incorporated in Madison County, Alabama in 1974. On June 27, 1975 Industrial Systems opened a corporate bank account with American National Bank by executing corporate banking resolutions, signature cards, and other documents necessary to open such an account. Paul D. Byler, president, and David N. Hinote, treasurer, were authorized to sign checks to be drawn on the corporate account.
In January of 1976 a bookkeeper was hired by the plaintiff to be in charge of preparing the accounts payable, billing, filing, preparing accounts receivable, balancing and reconciling the bank statements, and getting the books in order so that an outside tax service, Bartek, could prepare the tax returns and quarterly statements. Bartek's primary function was to prepare tax returns annually and quarterly and, initially, to instruct and train the bookkeeper on how to use the plaintiff's accounting system.
In February of 1977 the plaintiff discovered that checks had been paid from its corporate account with American National on forged signatures, forged by the plaintiff's bookkeeper. The forgeries had begun in June of 1976 and no one else, other than the plaintiff's bookkeeper, reconciled the bank statements or examined the cancelled checks during the months from June 1976 until February 1977. During this time the plaintiff received bank statements from *Page 744 
American National Bank which included the cancelled checks drawn on the account of the plaintiff. The first bank statement containing forged items was received on July 2, 1976.
American National Bank employed file clerks to examine each check for similarities in signature and for alterations against the signature card completed by its customer. The file clerks would follow this procedure before American National would pay checks drawn on the various accounts. The file clerks received on-the-job training. There was also testimony that this was the same procedure followed by other commercial banking institutions in the area.
After discovering the forgeries in February of 1977, Industrial Systems filed suit against American National for recovery of the amount of monies improperly drawn from its account on the checks bearing forged signatures. After the parties had rested their cases at the trial, the trial court granted the defendant's motion for a directed verdict. The trial court also gave judgment to Industrial Systems in the amount of $424.74 plus interest, this amount being the total of the forged checks paid by American National Bank on or before July 16, 1976. This was fourteen days from July 2, 1976, which is the date Industrial Systems received its first bank statement containing forged items. Industrial Systems appeals the granting of the directed verdict.
Section 7-4-406 (1), Code of Alabama 1975, imposes the following duties upon a bank customer:
 (1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof.
The undisputed evidence was that Industrial Systems received bank statements from American National Bank each month from July 1976 to February 1977, and that the statements contained the cancelled checks alleged to be forgeries. The evidence that the plaintiff's bookkeeper was the only person who examined the bank statements during this time period was also undisputed. The evidence also revealed that no one other than the bookkeeper had the responsibility to reconcile Industrial's bank statements. This evidence would support a finding that Industrial Systems totally failed to exercise reasonable care and promptness in examining cancelled checks and bank statements forwarded to plaintiff by American National Bank.See, Zenith Syndicate, Inc. v. Marine Midland Bank, 23 UCC Rep. 1267 (Civ.Ct.N.Y., 1978), which is factually identical to the case at bar.
Section 7-4-406 (2) states the effect of a failure of a customer to comply with subsection (1). It provides:
 (2) If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank:
 (a) His unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and
 (b) An unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding 14 calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
The official comment to § 7-406 states that subparagraph (a) precludes the customer from asserting against the bank an unauthorized signature if the bank establishes that it suffered a loss by reason of the customer's failure. The bank has the burden of establishing that it suffered some loss. There is uncontroverted evidence that *Page 745 
American National Bank suffered loss as a result of the plaintiff's failure to discover the forgeries.
Subparagraph (b) also precludes the customer from asserting against the bank any claim through checks which were paid by the bank more than fourteen days after the first statement containing an item with an unauthorized signature was made available to him. See Gennone v. Peoples National Bank TrustCo., 51 Pa.D.C.2d 529, 9 UCC Rep. 707 (1971). This provision applies only if all the forgeries were perpetrated by the same wrongdoer. There is no evidence that anyone other than plaintiff's bookkeeper was responsible for the alleged forgeries. The trial court granted the defendant's motion for a directed verdict only as to those checks paid by American National Bank after the fourteen day period.
The plaintiff correctly points out that § 7-4-406 (3) provides that § 7-4-406 (2)(a) and (b) are inapplicable where the "customer establishes lack of ordinary care on the part of the bank." The defendant contends that the plaintiff failed to establish such a lack of care on its part.
Defendant produced uncontradicted testimony that its method of processing cancelled checks was practically identical to that used by other banking institutions in the Huntsville, Alabama area. The evidence showed that defendant used file clerks to examine and file in the proper place each cancelled check. The clerk would examine each check against the signature card on file to determine the validity of the signature. The employees were high school graduates who had received on-the-job training.
Plaintiff argues, however, that this evidence does not establish that the defendant bank had exercised ordinary care in detecting the alleged forgeries. The bank does not have to establish that it exercised ordinary care. As previously noted, the plaintiff has the burden of establishing a lack of ordinary care on the part of the bank. The plaintiff has offered no evidence demonstrating that the method of detecting forgeries employed by the defendant bank fails to meet the ordinary care standard. Therefore the plaintiff has failed to carry its burden.
In the Zenith case, supra, the New York court found that in detecting forgeries a bank's employees cannot be held to a degree of expertness of a handwriting expert. We agree with such conclusion, for the standard is that of ordinary care. To require the check reviewing employees to be experts would establish a higher standard than that required.
Furthermore, § 7-4-103 (3), Code of Alabama 1975, provides that a general banking usage not disapproved under Article IV prima facie constitutes the exercise of ordinary care. The Official Comments to § 7-4-103 suggest that the party contesting the community banking standards which purport to satisfy the "ordinary care" requirement must show that they are unreasonable, arbitrary or unfair. The plaintiff has failed to do so in the case at bar.
In determining whether a motion for a directed verdict was properly granted or denied, the evidence presented at trial must be viewed in a light most favorable to the party against whom the motion for directed verdict was made. O'Donohue v.Citizens Bank, Ala.Civ.App., 350 So.2d 1049 (1977). If there is a scintilla of evidence supporting the position of the party against whom the directed verdict motion is made, the trial court cannot grant a directed verdict. O'Donohue v. CitizensBank, supra.
We have reviewed the evidence in a light most favorable to the plaintiff and find no genuine issue of fact. Therefore we affirm the trial court's decision.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 746