PER CURIAM.
The background for this appeal is a probate proceeding involving the estate of Margaret L. Louys, sister of Plaintiff/Appellant Clara Best.[1]
Margaret Louys and Clara Best lived together for a number of years before the death of Margaret Louys. Ms. Louys managed the financial affairs of both herself and Ms. Best, and the two women owned a number of bank accounts and certificates of deposit which were held in both women's names. Three of those C.D.’s to-talled $27,550 at First Alabama Bank. One C.D. also included the name of Margaret Braley, daughter of Ms. Louys.
First National Bank of Birmingham (FNB) and Kathy James (grandniece of Ms. Louys) were appointed co-executors of the estate of Ms. Louys. George Stevens was the FNB trust officer assigned to the administration of the estate. Ms. Louys’s will provided that Ms. Best would receive a one-half interest in Ms. Louys’s house. The remainder of the estate assets were to be placed in a trust, of which Margaret Braley would be the beneficiary, with her children as remaindermen at her death. Ms. Best had no interest in the trust.
In researching the ownership of the various bank accounts and C.D.’s bearing Ms. Louys’s name, Mr. Stevens determined whose monies actually purchased the accounts or C.D.’s, under whose social security numbers the interest was reported for income tax purposes, and whose name was listed first on the C.D.’s. Ms. Best’s name appeared first and her social security number was used on the C.D.’s. Ms. Best, however, testified that all three of the First Alabama C.D.’s were purchased with her sister’s money.[2]
*389 Ms. Best turned over to Stevens one of the First Alabama Bank C.D.’s and signed an authorization for FNB to obtain the other two from safekeeping at First Alabama. Thereafter, during one of her meetings with Stevens, Ms. Best endorsed the three First Alabama C.D.’s. Ms. Best claims that she signed the C.D.’s to allow Mr. Stevens to obtain their proceeds from First Alabama Bank for her. Approximately one week later, Stevens again met with Ms. Best and obtained her endorsement on a check for $27,550 made payable to Ms. Best (an amount representing the total of the three C.D.’s with First Alabama). This check was deposited with the estate. Ms. Best claims that each time she met with Stevens she inquired of him about the interest the C.D.’s were earning for her. FNB states, however, that:
“Stevens told Mrs. Best that the estate’s attorney ... had determined that the First Alabama certificates were part of the estate. Mrs. Best expressed concern that one of the certificates had matured and was not drawing interest.”
Mr. Stevens wrote a letter to Ms. Best notifying her of the final probate hearing in Ms. Louys’s estate. Ms. Best signed a waiver of notice on the final hearing in probate, which waiver stated that she was entering her appearance in the probate court. FNB points out that “Mrs. Best consulted her lawyer ... no later than January 17, 1982, two days prior to the Hearing on Final Settlement. She did not object to the executors’ accounting and subsequent discharge, and did not appeal the Probate Court’s Final decree.” One witness, Ms. Lorraine Bowen, testified that she was present when Stevens explained to Ms. Best that the certificates did not belong to her but to Ms. Louys’s estate. Ms. Bowen further testified that she asked Stevens to explain to Ms. Best again the ownership of the C.D. s so that Ms..Best would understand that the money did not belong to her.
The final decree of the probate court closing the estate transferred the funds at issue to the permanent trust set up by Ms. Louys’s will and authorized the payment of $5,500 in commission to FNB and Mrs. James. Ms. Best filed suit in the circuit court against FNB, alleging fraud and conversion of a check for $27,550 (the proceeds from the three C.D.’s). The case was tried before a jury, which rendered a verdict in favor of Ms. Best and awarded her $70,000. The trial court granted FNB’s motion for J.N.O.V. and Ms. Best appeals. We reverse and remand.
Ms. Best’s allegations in circuit court were that George Stevens, as an agent of defendant FNB, converted and fraudulently deprived her of the C.D.’s she owned jointly with Ms. Louys. In reply to FNB’s contention that these claims were proper subjects for adjudication in the probate court, thus barring their later assertion, Ms. Best cites Blair v. Rice, 216 Ala. 586, 114 So. 194 (1927):
“Conversion of the property of another by an administrator under claim that it is the property of the estate is the tort of the administrator personally and individually. He can in no wise bind the estate of the decedent by such act. He is without power so to do. The action must be against him individually and not against him as administrator. ...” 216 Ala. at 586, 114 So. at 194.
She also cites Fidelity & Deposit Co. of Maryland v. Wilkinson, 230 Ala. 586, 162 So. 666 (1935):
“For wrongful and illegal acts outside his authority working injury to third persons, the guardian is bound personally *390 and individually, not the estate he represents, nor the surety on his bond.” 230 Ala. at 588, 162 So. at 667.
Additionally, this Court’s recent decision in Broughton v. Merchants National Bank of Mobile, 476 So.2d 97 (Ala.1985), illustrates the distinction, for res judicata purposes, between those claims of mismanagement and breach of fiduciary duty against an administrator in his representative capacity, for which the estate itself is liable, and those tort claims against an administrator in his individual, personal capacity. That distinction had been well stated in an earlier case:
“A test of representative or individual liability is whether the judgment, the suit against the administrator as such would invite, would ‘fasten or establish a liability upon or against property of the decedent.’ ” Campbell v. American Bonding Co., of Baltimore, 172 Ala. 458, 459-60, 55 So. 306, 307 (1911).
In Broughton, the heir’s subsequent collateral suit against the trustee of a living trust reasserted substantially the same claims previously adjudicated against him in the probate proceeding. Although the Broughton claimant sued the trustee individually, the identity of the two claims invoked the “issue preclusion” principle of the res judicata doctrine and barred the second suit.
In sharp contrast to Broughton, Ms. Best sued the executor individually, claiming damages for the alleged wrongful conversion of her property. It matters not that FNB placed the money in the estate or that Ms. Best may have had a valid claim against the estate for an amount equal to her one-half interest in the converted C.D.'s. Her instant claim is for the independent tort of wrongfully taking her personal property — a claim for which only the wrongdoer, personally and individually, bears liability, the wrongful conduct being outside the representative’s authority to act for the estate.
In summary, then, the distinction between those claims against an executor in his representative capacity, and those against an executor personally, finds its analysis in the nature of the claim asserted and in the capacity in which the executor or trustee is sued. Here, as we have seen, the claims for the wrongful taking of personal property and for fraud associated therewith — torts committed outside and beyond the executor’s authority to act for the estate — were brought against the executor in its individual capacity.[3] Therefore, in keeping with clear precedent, we find that Ms. Best’s claims for fraud and conversion are not barred by the application of res judicata and were proper subjects for consideration by the circuit court.
The jury, in the trial below, observed the demeanor and heard the testimony of each witness; and, weighing that evidence, it returned a verdict in favor of Ms. Best and awarded her $70,000. In reviewing the trial court’s entry of the judgment notwithstanding the jury’s verdict, we must view the evidence of record in a light most favorable to Ms. Best and determine whether there was indeed a complete absence of proof as to the material issues of fraud and conversion or whether there did exist a “controverted question of [material] fact on which reasonable people could differ.” Deaton, Inc. v. Burroughs, 456 So.2d 771 (Ala.1984).
The challenged judgment does not reveal the specific ground upon which the trial judge based his J.N.O.V. order. Our review of the record, however, does disclose sufficient evidence from which reasonable inferences could have been made by the jury to support its finding for Ms. Best, and thus defeat FNB’s motion for J.N.O.V. on the “sufficiency of the evidence ground.” See Garrett v. Key Ford, Inc., 456 So.2d 77 (Ala.Civ.App.1984); O’Donohue v. Citizens Bank, 350 So.2d 1049 (Ala.Civ.App.1977). Because we find no valid ground for J.N.O.V., then, the trial court’s order is due to be reversed.
*391 But our inquiry does not end at this point. According to A.R.Civ.P. 50(c)(1):
“If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.”
Here, the trial court’s order reads:
“Defendant’s motion for judgment notwithstanding the verdict is granted because the court should have directed a verdict in favor of said defendant at the close of all the evidence. Under Rule 50(c)(1), this court also rules on defendant’s motion for new trial and determines that it should be granted, if the judgment against plaintiff notwithstanding the verdict is hereafter vacated or reversed, and as grounds therefor sets down and assigns, separately and severally, all of the grounds set out in defendant’s motion for new trial, and incorporates all of them herein by reference thereto.”
In a procedurally correct fashion, pursuant to A.R.Civ.P. 50(c)(1), the trial judge has ruled that, in the event this Court reverses his J.N.O.V. order, FNB is entitled to a new trial on any and all grounds stated in its alternative post-judgment motion. Thus, this Court, upon proper challenge, must now review the “new trial” issue on the merits. Contrary to the objective standard for reviewing a J.N.O.V. order, the standard applicable to a new trial order is more subjective because of the discretionary nature of such a ruling when it is based upon the relative weight of the evidence.[4] The standard by which the trial court tests a “weight of the evidence” ground for a new trial is well established: A verdict based upon evidence sufficient for jury submission should not be set aside unless it is so against the great weight and preponderance of the evidence that a judgment based upon such verdict would be plainly and palpably wrong and manifestly unjust. And, to this basic rule must be added: Upon appellate review, this discretionary ruling is entitled to a presumption of correctness and will be set aside only for abuse of discretion.
Applying this standard, we find that the trial judge did abuse his discretion in his alternative order granting a new trial. We feel constrained to reach this conclusion primarily because of the undisputed, objective evidence of Ms. Best’s one-half ownership in the subject C.D.’s as a matter of law, as well as FNB’s taking and placing these assets into the estate. The only evidence in dispute relates to a relatively minor, if not immaterial, matter — the details of the conversation between the trust officer and Ms. Best in accomplishing this transfer. It is unreasonable to infer from this “disputed” . evidence that Ms. Best freely and voluntarily intended to surrender her individual property by making a gift to her sister’s estate. Thus, we perforce conclude that this verdict is supported by a preponderance of the evidence.
The judgment notwithstanding the verdict is reversed; the order granting a new trial is reversed; and this cause is remanded with instructions to the trial court to reinstate the judgment based upon the jury verdict.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES, SHORES, and ADAMS, JJ., concur.

. During the pendency of this appeal, the death of Clara Best was suggested of record. On remand of this cause, Appellant’s counsel should take the appropriate steps to effect a substitution of parties. See Rule 43(a), A.R.A.P.

. Our recitation of these facts is not to be construed as our approval of the FNB three-point *389 criteria for determining the legal ownership of the bank's deposits. Indeed, under the undisputed facts of this case, upon Ms. Louys’s death, one-half interest in these jointly held certificates (without right of survivorship) belonged to her estate and one-half interest was owned by Ms. Best as a matter of law. Code 1975, § 35-4-7. For an excellent discussion of the application of this Code section, see Parr v. Godwin, 463 So.2d 129 (Ala.1984), Torbert, C.J., dissenting. Additionally, we note that, even applying its own criteria, FNB accepted only the one point favoring ownership by the estate (the source of the money). This "violation of its own standard" argument is urged by Appellant.

. For further clarification of this distinction, see Sims v. Hipp, 216 Ala. 439, 113 So. 296 (1927), in which the court, under the facts of that case, held the administrator liable in his representative, and not his individual, capacity for his mishandling of the estate.

. Although the trial court's order states that it is based on "all of the grounds set out in the defendant’s motion,” the only viable ground we discern, and the only one argued in support of the court’s ruling, is the “great weight and preponderance of the evidence" ground.