709 So.2d 16 (1997)
Ex parte INDUSTRIAL DISTRIBUTION SERVICES WAREHOUSE, INC.
(In re Billy Glen JACKSON v. INDUSTRIAL DISTRIBUTION SERVICES WAREHOUSE, INC.).
1961225.
Supreme Court of Alabama.
November 21, 1997.
*17 C. William Gladden and James S. Witcher III of Gladden & Sinor, P.C., Birmingham, for petitioner.
W. Lee Pittman of Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, for respondent.
HOUSTON, Justice.
Billy Glen Jackson sued Industrial Distribution Services Warehouse, Inc. ("Industrial Distribution"), alleging, among other things, that Industrial Distribution had negligently or wantonly allowed him to fall off an interior loading dock at its warehouse; that the loading dock was defective and/or unreasonably dangerous; that Industrial Distribution had failed to remedy the defect and/or danger that caused him to fall; and that Industrial Distribution had failed to warn him about the defect and/or danger posed by the loading dock. The trial court entered a summary judgment for Industrial Distribution. The Court of Civil Appeals affirmed the summary judgment with respect to the wantonness claim; however, it reversed with respect to the negligence claim, holding that there were genuine issues of material fact to be resolved *18 by a jury. Jackson v. Industrial Distribution Services Warehouse, Inc., 709 So.2d 12 (Ala.Civ.App.1997). We granted Industrial Distribution's petition for certiorari review to consider whether the Court of Civil Appeals erred in reversing with respect to the negligence claim. We reverse and remand.
The pertinent facts, which are not disputed by the parties, were adequately set out in the opinion of the Court of Civil Appeals:
"[Industrial Distribution] operates an industrial warehouse in Birmingham. A heavy snow fell in the Birmingham area in mid-March 1993, causing significant damage and disruption in the area. On the morning of March 15, when [Industrial Distribution's] vice president, David Blount, arrived at the warehouse, he discovered that it had sustained substantial structural damage because of the snowstorm. A portion of the roof had collapsed, water pipes were broken, and the basement was flooded. In addition, the building had no electricity. Blount called the Birmingham Fire Department and the Birmingham/Jefferson County Emergency Management Agency. After inspecting the damage to the warehouse, both the fire department and the emergency management agency found that no stored chemicals had spilled and they approved Blount's request to have the water pumped out of the basement.
"At all pertinent times, Jackson owned and operated Southern Equipment and Chemical Company. The business sold chemicals, cleaned up spilled chemicals, and rented cleanup equipment and pumps. Blount called Jackson at home to hire him to remove the water in [Industrial Distribution's] basement. Jackson stated that Blount told him about the flooded basement, in which barrels of chemicals were floating, and said he understood that Blount wanted the water pumped out and the barrels secured immediately, regardless of the cost. Blount stated that Jackson agreed to meet him at the warehouse, and he said that he expected to meet Jackson outside the warehouse office when he arrived.
"Jackson arrived at the warehouse approximately 30 to 45 minutes after Blount's telephone call. A fire truck was parked in front of the building with its emergency lights flashing; three firemen were outside the building. Jackson said he spoke with one of the firemen, who told him that the building had no electricity. Jackson asked the fireman to go inside with him to find the man who had telephoned him. The fireman said a man was with his captain and that he would show Jackson where they were. No one associated with [Industrial Distribution] was aware that Jackson had arrived or [that he] had entered the building.
"Jackson and the fireman went through an exterior door into an office, where the open exterior door provided light. Jackson stated that the fireman then said to follow him, and went through another door into the warehouse itself. Jackson followed the fireman into the warehouse, where the only light came from holes in the building's roof. The fireman had a flashlight, but Jackson did not. Jackson said that after he and the fireman stopped walking, the fireman called for his captain. When the captain replied, Jackson said he saw the silhouettes of two people approximately 50 feet away, one of whom was holding a flashlight pointing downward. At that point, Jackson took a step in the direction of the silhouettes and fell approximately five feet. He could not see that he had been standing on the edge of an interior loading dock. Jackson admits that he was not familiar with the building, that he could not see what was in front of him, and that he assumed he was stepping onto a floor. He was seriously injured as the result of his fall. Blount maintains that he was not aware that Jackson had entered the building and that he had been injured until approximately two weeks after the accident."
709 So.2d at 13-14.
Relying primarily on Owens v. National Security of Alabama, Inc., 454 So.2d 1387 (Ala.1984), Industrial Distribution contends that this is the typical "step in the dark" case, in which there is no duty on an invitor *19 to warn of, or protect against, unseen hazards that an invitee may encounter on the invitor's premises under conditions of darkness. According to Industrial Distribution, the Court of Civil Appeals misapplied Owens to the facts of this case. Jackson, on the other hand, contends that this is not the typical "step in the dark" case and, therefore, that Owens does not control. He argues that his theory of liability was not predicated on the existence of a duty on Industrial Distribution to warn him that the warehouse was dark inside; rather, he says, a jury question was presented as to whether Industrial Distribution failed to exercise reasonable care by not erecting and maintaining a guardrail across the loading dock and as to whether he acted reasonably under the circumstances by accompanying a fireman into the warehouse. The essence of Jackson's argument, as we understand it, is that Owens does not apply because, he argues, there is evidence that he was exercising reasonable care when he entered the warehouse with the fireman. That being the case, Jackson maintains, a jury should be allowed to determine whether he acted reasonably under the circumstances and whether Industrial Distribution acted negligently by not erecting a guardrail across the loading dock. The Court of Civil Appeals, agreeing with Jackson, stated:
"Jackson argues that the loading dock itself was defective or unreasonably dangerous and that [Industrial Distribution] had failed to remedy that condition. His expert witness testified that the loading dock should have had some type of physical guard or railing in place to safeguard against the hazard of a five-foot drop inside a building. Furthermore, Jackson did not attempt to walk through the dark warehouse alone, but entered the building with a fireman who apparently had been inside before he offered to take Jackson to the owner. The circumstances of this case do not conform to the typical `step in the dark' case in which a landowner is absolved of any duty to warn of unseen hazards. We cannot say that the alleged hazard presented by the loading dock was open and obvious as a matter of law."
709 So.2d at 15.
Assuming that Jackson was an invitee when he entered Industrial Distribution's warehouse, a fact that is conceded by Industrial Distribution for purposes of this appeal, then Industrial Distribution was under a duty to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises were in a dangerous condition, to give sufficient warning so that, by use of ordinary care, Jackson could avoid the danger. Armstrong v. Georgia Marble Co., 575 So.2d 1051, 1053 (Ala.1991). It is well established, however, that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care. If the danger is open and obvious, the invitor cannot be held liable. Williams v. Newton, 526 So.2d 18 (Ala.1988). Total darkness, possibly concealing an unseen and unknown hazard, presents an open and obvious danger to someone proceeding through unfamiliar surroundings, as a matter of law. Owens, supra.
In Owens, the injured plaintiff,[1] an employee of an independent contractor performing maintenance work on the premises of Montgomery Food Processors, was injured when he tripped over a forklift while walking to work through a dark portion of Montgomery Food Processors' plant. The plaintiffs sued the company in charge of the plant's security, contending that it had negligently caused or allowed the lights to be turned off without warning the injured plaintiff that the lights would be off. The trial court entered a summary judgment for the security company. This Court affirmed, stating in part:
"Before reaching the issue of whether Owens assumed the risk or was contributorily negligent, we must first find some evidence that National Security breached its duty of care by failing to warn Owens that the lights were out. There is no duty to warn when the danger is fully known to the party who was injured. Crawford Johnson & Co. v. Duffner, 279 Ala. 678, 681, 189 So.2d 474, 476 (1966). Similarly, *20 there is no duty to warn of open and obvious defects which the injured party should be aware of in the exercise of reasonable care. Shaw v. City of Lipscomb, 380 So.2d 812, 814 (Ala.1980); Tice v. Tice, 361 So.2d 1051, 1052 (Ala.1978); Hand v. Butts, 289 Ala. 653, 656, 270 So.2d 789, 791 (1972). The law does not require the doing of a useless act.
"The evidence is undisputed that Owens knew that he was entering a room which was not lighted. Although the entrance area was somewhat illuminated by natural light, the interior of the cavernous building was obviously dark. Owens admitted using a lighter and shuffling his feet, undisputed facts which prove his knowledge of the dark conditions. Even without a warning, a reasonable person in the position of Owens would know the room was dark. Darkness is a plain condition which is open and obvious. Reasonable persons do not walk the length of a large, windowless, and unlighted building and not realize that the way is dark.
"Owens contends that the darkness, coupled with the position of the forklift, led to a duty to warn. It is important to note that Owens does not argue that National Security was responsible for positioning or moving the forklift. Owens misunderstands the concept of open and obvious dangers. When someone proceeds through an unfamiliar facility in the dark, he has no right to assume that his course is clear. See Yoder v. Greenwald, 246 So.2d 148, 150 (Fla.Dist.Ct.App.1971). This rule is certainly as appropriate as the rule that water is an open and obvious danger, and hence no duty to warn exists even where the water conceals dangers beneath the surface. See generally Alabama Great Southern Railroad Co. v. Green, 276 Ala. 120, 159 So.2d 823 (1964). Under these circumstances, we hold as a matter of law that National Security had no duty to warn Owens that the room was dark."
454 So.2d at 1389-90.
After carefully reviewing the record and the briefs, we cannot distinguish Owens from the present case. In Owens, the injured plaintiff attempted to walk through a dark building and was injured by a hazardous condition that, under the circumstances, he could not anticipate. In the present case, Jackson attempted to walk through a dark building and was injured by a hazardous condition that, under the circumstances, he could not anticipate. In Owens, the condition that caused the injury (the forklift) was hazardous only because of the darkness. In the present case, the condition that caused Jackson's injury (the loading dock) was hazardous only because of the darkness. In Owens, there was evidence indicating that the injured plaintiff exercised reasonable care in attempting to walk through the dark building (by using a lighter and shuffling his feet). In the present case, there was evidence indicating that Jackson acted reasonably under the circumstances by relying on the fireman to lead him through the dark building. Contrary to Jackson's contentions, and the holding of the Court of Civil Appeals, whether a jury might find that Jackson acted reasonably in his attempt to negotiate the warehouse in total darkness is not material to the question whether Industrial Distribution owed any duty to Jackson to eliminate, or warn of, the danger posed by the unseen loading dock. Owens dealt with the initial legal duty owed by the premises owner, not with the affirmative defenses of contributory negligence and assumption of the risk. The Owens Court noted: "Because we find that National Security did not owe a duty to warn Owens that the room was dark, we pretermit any discussion of assumption of the risk, contributory negligence, or the statute of limitations." 454 So.2d at 1390. Owens was a refinement of the well-established rule that an invitor is not liable for injuries to an invitee that result from an open and obvious danger. Owens stands for the proposition that a dark, unfamiliar building that may conceal hidden hazards, much like a body of water that may conceal hazards beneath the surface, poses an open and obvious danger to an invitee, such as Jackson, who attempts to make his way through such a building. This is so even though the invitee may use due care to avoid injury, because the focus of our premises liability law is not on the care that may have been exercised by the invitee (unless *21 contributory negligence is an issue), but on relieving a premises owner of legal liability where an invitee knew of the danger that caused the injury or should have observed that danger through the exercise of reasonable care. See McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 959 (Ala.1992), wherein this Court, quoting Quillen v. Quillen, 388 So.2d 985 (Ala.1980), stated:
"`Therefore, as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court in Lamson & Sessions Bolt Co. [v. McCarty, 234 Ala. 60, 63, 173 So. 388, 391 (1937) ]:
"`"In 45 C.J. § 244, p. 837, the rule is thus stated: `The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.'"
"`Accord McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala.1979); Tice v. Tice, 361 So.2d 1051 (Ala.1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.'

"388 So.2d at 989. See also Restatement (Second) of Torts § 343A(1) (1965)." (Emphasis added.) Compare Furgerson v. Dresser Industries, Inc., 438 So.2d 732 (Ala. 1983), and Kingsberry Homes Corp. v. Ralston, 285 Ala. 600, 235 So.2d 371 (1970), which are distinguished in Owens. In both of those cases, there was evidence suggesting that although the particular defective conditions were obvious, the dangerous potential of those conditions was not appreciated by the injured plaintiffs. See Young v. LaQuinta Inns, Inc., 682 So.2d 402 (Ala.1996). See, also, Nayman v. Tracey, 599 So.2d 604 (Ala. 1992); and Berness v. Regency Square Associates, Ltd., 514 So.2d 1346 (Ala.1987), holding that Owens is not controlling in the landlord-tenant context where there are factual questions surrounding a landlord's duty to light and maintain "common" areas.
For the foregoing reasons, the judgment of the Court of Civil Appeals is reversed with respect to Jackson's negligence claim, and the cause is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, and SEE, JJ., concur.
COOK, J., concurs in the result.
BUTTS, J., dissents.
COOK, Justice (concurring in the result).
In opposition to the motion for summary judgment, the plaintiff states in his brief that this is not the typical "step in the dark" case. The plaintiff contends that a guardrail should have been in place across the loading dock, or, alternatively, a warning of an unguarded drop-off. The plaintiff also contends that the evidence supports the inference that he reasonably followed a fireman, who had a flashlight, into the unlighted building. In other words, the plaintiff states that this case is not controlled by the absence of the landowner's duty to warn of the darkness; rather, he argues, this case presents a jury question on the question of the landowner's duty to erect a barrier across the loading dock or provide a warning of an unguarded drop-off. In addition, the plaintiff argues that it is a jury question whether he was contributorily negligent when he stepped away from the fireman into the dark in the direction of the fire *22 captain. If the landowner's standard of care called for a guardrail to be placed across the loading dock, which would have prevented the plaintiff's fall, the plaintiff's argument that the lack of a guardrail, rather than darkness, caused the fall would present a jury question.
I agree that darkness constitutes an open and obvious condition, for which there is no duty to warn. Owens v. National Security of Alabama, Inc., 454 So.2d 1387 (Ala.1984). However, if the evidence indicates that the darkened condition was not the sole proximate cause of the fall, but that the fall was caused in part by the breach of some other duty, such as the lack of a guardrail, then the step-in-the-dark rule would not preclude this case from going to a jury. In reaching this determination, I do not focus on any conduct that may constitute contributory negligence by the plaintiff. I examine only the conduct of the defendant that relates to a duty owed or a breach of duty. Although I agree with the plaintiff's analysis on the applicability of the step-in-the-dark rule, I am not persuaded that the facts, as presented, constitute substantial evidence that the landowner breached a duty to erect a guardrail across the loading dock.
As the facts indicate, the plaintiff was called to the property in response to damage caused by a storm. The building was flooded and had no electrical service. The plaintiff's expert, Lawrence Weaver, testified, in substance, that if the loading dock is not being used as a loading dock then it should be guarded. He testified in part:
"I am testifying that the loading dock needs to be guarded if it's not in use as a loading dock.... During periods of time where it has no intention of being used in that capacity or as otherwise[,] a means of providing protection from risk, ... a guard should be across it, physical means of barrier, or someone in this event to at least warn of that risk.
"....
"If you follow this code or any of these codes that are enumerated here, it's going to essentially consist of a physical barrier that has a top rail that is 42 inches above floor level and a mid rail halfway between the top and the floor and then a four-inch high toe board or kick board that's in contact with the floor, each of which, in essence, will withstand 200 pounds of side force or thrust."
The standard of care imposed on the landowner urged by the plaintiff is predicated on a guardrail being in place during periods when the loading dock will not be used. The landowner offered evidence that the loading dock was being used and had not been abandoned. The plaintiff argues that the expert's testimony should be interpreted to mean that a guardrail should have been in place at the time of the plaintiff's fall. I cannot say that this is what the expert meant. The expert's testimony that the dock should have been guarded "[d]uring periods of time where it has no intention of being used in that capacity or ... otherwise" is subject to at least a dual interpretation. It could mean that the dock should be guarded if it will not be used over an extended period, or that it should be guarded during intermittent use. In any event, I do not find that this testimony constitutes substantial evidence indicating that the landowner failed to adhere to the proper standard of care. For the reasons expressed above, the summary judgment was proper. I concur in the result.
NOTES
[1] The injured plaintiff's wife filed a derivative claim for loss of consortium.