752 So.2d 1186 (1999)
GENERAL MOTORS CORPORATION
v.
Billie HILL.
1971281.
Supreme Court of Alabama.
July 16, 1999.
Rehearing Overruled November 19, 1999.
Opinion Dissenting from Overruling of Rehearing November 19, 1999.
Warren B. Lightfoot, William H. Brooks, and Madeline H. Haikala of Lightfoot, Franklin & White, L.L.C., Birmingham, for appellant.
*1187 G. Whit Drake of Drake & Associates, Birmingham; and Tom Drake of Drake & Drake, Cullman, for appellee.
PER CURIAM.
General Motors Corporation ("GM") appeals from a $2.2 million judgment of the Limestone Circuit Court; that judgment was based upon a jury verdict for Billie Hill, as administratrix of the estate of her husband Van Allen Hill, on a wrongful-death claim. We reverse and remand.
The accident giving rise to this action occurred on June 11, 1996, at a facility operated by GM. Mr. Hill was driving a buggy through a dark area when he struck a 25-foot, parked flatbed trailer. He died as a result of the injuries he sustained in the accident. His widow, as administratrix of his estate, sued GM, alleging that negligence or wantonness on the part of GM had proximately caused his accident and death. GM argued that as the owner of the premises where the accident occurred, it did not owe a duty to warn Mr. Hill of darkness, and that it did not breach the limited duty it owed to Hill as an invitee. GM also contends that negligence on the part of Hill contributed to the accident.
Mr. Hill was an employee of Restaura, Inc., an independent contractor responsible for the food and beverage vending machines at the GM facility. Mr. Hill was responsible, during his shift from 3:00 p.m. to 10:00 p.m., for the service and upkeep of the vending machines located throughout the facility. Mr. Hill, as an invitee on GM's premises, drove a motorized buggy supplied by Restaura and routinely drove the buggy back and forth behind the three separate manufacturing plants within the facility.
The case was tried to a jury. At the close of the plaintiff's case, the trial judge granted GM's motion for a judgment as a matter of law on the wantonness claim. He denied GM's motion for a judgment as a matter of law on the negligence claim and sent the negligence claim to the jury. The jury awarded the plaintiff $2.2 million in punitive damages. GM timely filed a renewed motion for a judgment as a matter of law and, in the alternative, moved for a new trial or a remittitur. The trial court denied GM's motions for a judgment as a matter of law and for a new trial. After a hearing, pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986); Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala.1989); and BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the trial court denied GM's motion for a remittitur.
GM's liability is predicated solely on its status as a landowner and Mr. Hill's status as an invitee. GM's duty of care with respect to invitees is that duty stated in Ex parte Industrial Distribution Services Warehouse, Inc., 709 So.2d 16, 19 (Ala.1997):
"[A landowner is] under a duty to use reasonable care and diligence to keep the premises in a safe condition, or, if the premises [are] in a dangerous condition, to give sufficient warning so that, by use of ordinary care, [an invitee can] avoid the danger. It is well established, however, that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care. If the danger is open and obvious, the invitor cannot be held liable. Total darkness, possibly concealing an unseen and unknown hazard, presents an open and obvious danger to someone proceeding through unfamiliar surroundings, as a matter of law."
(Citations omitted.) See also Owens v. National Sec. of Alabama, Inc., 454 So.2d 1387, 1389 (Ala.1984) (stating that "[w]hen someone proceeds through an unfamiliar facility in the dark, he has no right to assume that his course is clear"). "Unfamiliarity can arise when the injured party is in the facility for the first time or when he has knowledge that the equipment and internal layout [are] frequently rearranged." Owens, 454 So.2d at 1389 n. 3.
*1188 The trial court held that GM was not entitled to a judgment as a matter of law because, it held, the evidence created factual disputes as to the extent of the lighting of the area around the flatbed trailer involved in the collision. However, such disputes are irrelevant, because the danger that led to the accident was open and obvious, regardless of the lighting conditions.
The area where the collision occurred was an area that was "frequently rearranged" with an assortment of trailers, motor vehicles, and materials. The facts show that the 25-foot flatbed trailer had been parked in that area for 12 hours before the collision and that on the day of the accident Mr. Hill had traveled past the trailer at least twice before he made the round during which the collision occurred. If the lighting was sufficient for Mr. Hill to see the trailer during the last pass, then any danger posed by the positioning of the trailer was open and obvious. If the area was so dark that Mr. Hill could not see such a large trailer in his path, then the darkness itself presented a danger that was open and obvious. Either way, because the "open and obvious" characterization is measured objectively, see Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158 (Ala.1997), Mr. Hill should have known of the dangerous conditions; therefore, GM owed him no duty to warn.
The judgment is reversed and the case is remanded.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
COOK and JOHNSTONE, JJ., dissent.
COOK, Justice (dissenting).
I respectfully dissent.
As the majority points out, the "liability [of General Motors (`GM')] is predicated solely on its status as a landowner and Mr. Hill's status as an invitee." 752 So.2d at 1187.
In his order denying GM's motion for a judgment as a matter of law, the trial judge stated:
"There is no contention by Plaintiff, through the course of the trial or by way of response to this motion, ... that GM owed any duty to warn Mr. Hill of darkness. The only relevant issue before the court in this regard concerns whether GM breached the limited duty it owed to Mr. Hill as an invitee. It is the position of GM, as a matter of law, that GM, as landowner, did not owe any duty to Mr. Hill with respect to the conditions that allegedly caused his death because those conditions were open and obvious to Mr. Hill, an invitee on GM's premises. As a result, [GM] argues that the case should not have been submitted to the jury at all and the verdict should, therefore, be set aside.
"The law is clear that a landowner has a duty to its invitees to maintain its property in a reasonably safe condition. It was the position of Plaintiff at trial that GM breached its duty to maintain its premises in such a condition based on several distinct facts. One of these involved the fact that the exterior lights in the vicinity of the accident were not working properly and, as a result of the darkness in the area, Plaintiffs decedent did not see the parked flatbed trailer that he struck. [GM] cites two decisions of the Alabama Supreme Court as being controlling with regard to this issue of lighting. Those cases are: Owens v. National Security of Alabama, Inc., 454 So.2d 1387 (Ala.1984), and Ex parte Industrial Distribution Services Warehouse, Inc., 709 So.2d 16 (Ala.1997).
"In Owens, the plaintiff was an employee of an independent contractor performing maintenance work[; he] was injured when he tripped over the blade of a parked forklift while walking through a dark room. The plaintiff claimed that the defendant negligently caused or allowed the lights to be turned off without warning the plaintiff that the lights *1189 would be out. The Alabama Supreme Court rejected this argument and affirmed summary judgment in favor of the defendant, holding:
"`When someone proceeds through an unfamiliar facility in the dark, he has no right to assume that his course is clear. This rule is certainly as appropriate as the rule that water is an open and obvious danger, and hence no duty to warn exists even where the water conceals dangers beneath the surface. Under these circumstances, we hold as a matter of law that the defendant had no duty to warn [the plaintiff] that the room was dark.'
[454 So.2d at 1389-90 (citations omitted; emphasis added).] The [Owens] Court went on to hold that:
"`The condition of total darkness is sufficient to put reasonable people on notice of a substantial risk of concealed hazards.'
[454 So.2d at 1390.]
"It is argued by [GM] that this same analysis is applicable to the case at hand. This court disagrees with that contention. The facts presented in this case did not show that Hill is unfamiliar with the facility. He had been [employed on the premises of the GM facility] for years. The facts of this case also do not present with clarity that this was a total darkness case. The issue of lighting was clearly a factual matter for the jury to determine. The issue of total darkness is a stipulated fact in the Owens decision. No one knows for certain what the actual condition of the lighting was on the night Mr. Hill was killed. This court has reviewed the complete transcript of the case and has reviewed all witnesses who offered testimony relative to the lighting conditions before and after the accident. The questions that surface from a review of those witnesses are as follows: 1) What lights were out? 2) How long had they been out? 3) Was it a sudden outage based on an electrical storm or had the light been out for some time? 4) Did [GM] know that this was a fairly messy, unlit area and that workers had to use this area at night? All of these fact questions were presented to the court, and only a jury could draw reasonable inferences from said facts to make a determination about the lighting conditions on the night of Mr. Hill's death. There were no eyewitnesses to the accident, and this court cannot, as a matter of law, infer what the deceased knew or should have known based on the factual disputes relative to the condition of the premises on the night in question. Even under the facts of the Owens decision, the defendant prevailed in a five-to-four decision. Justice Embry, in his dissent, stated as follows:
"`The duty to warn usually arises from the particular relationship of the parties and under the particular facts of each case. To say, as a matter of law, there was no duty to warn under the facts of this case is a severe test of one's credulity.'
[454 So.2d at 1391.]
"The facts of the case at hand differ greatly from [those in Owens]. The facts are clearly in dispute. There is no eyewitness to the accident and only a jury, within their exclusive province, can make a ruling in such a case.
"In the Industrial Distribution case, the defendant operated an industrial warehouse in Birmingham. Following a snowstorm in 1993, the warehouse sustained structural damage and completely lost its electricity. The plaintiff was hired to pump water out of the basement of the warehouse. The plaintiff walked into a dark building without a flashlight and fell off the edge of an interior loading dock. As a result, the plaintiff was seriously injured[; he sued]. The trial court rendered summary judgment in favor of the defendant landowner. The Alabama Supreme Court held that summary judgment was appropriate based on the holding in Owens. The Court stated that the defendant was under a duty to use reasonable *1190 care and diligence to keep in the premises in a safe condition.
"`It is well established, however, that an invitor is not liable for injuries to an invitee resulting from a danger that was known to the invitee or that the invitee should have observed through the exercise of reasonable care. If the danger is open and obvious, the invitor cannot be held liable. Total darkness, possibly concealing an unseen and unknown hazard, presents an open and obvious danger to someone proceeding through unfamiliar surroundings, as a matter of law.'
[709 So.2d at 19 (citations omitted).]
"[GM] argues that in the case at hand Mr. Hill knew of the alleged dangerous condition or, at a minimum, should have observed such condition through the exercise of reasonable care. There is no way this court can make a ruling of what Mr. Hill knew. The accident killed him, and we certainly don't have available his testimony relative to those conditions. Also, we do not know as a matter of law what the exact lighting conditions were at the plant on the night in question. Both cases cited by [GM] clearly are total-darkness cases and clearly are cases whereby the plaintiff is proceeding in an unfamiliar environment. There was clear evidence from which a jury could infer that Mr. Hill completely failed to exercise reasonable care for his own safety by making a conscious decision to use a buggy without headlights. However, to argue that he drove through an area at night that he absolutely knew was dark is not supported by the evidence."
The trial judge correctly concluded that this case is distinguishable from Owens and Industrial Distributioncases in which the evidence showed that the injured persons were unfamiliar with the darkened premises they entered. However, Mr. Hill had been employed by Restaura, Inc., at this GM facility for a number of years, and every night he traveled the same blackened, asphalt pathway at GM. The landowners in Owens and Industrial Distribution could not have foreseen that the plaintiffs would travel in a path that would cause their injuries; however, GM knew Mr. Hill's nightly travel pattern along a pathway that was normally clear for the passage of his buggy. I agree with the trial judge that this was not a "total-darkness" case in which the darkness presented, as a matter of law, an open and obvious danger to someone proceeding through either familiar or unfamiliar surroundings.
The majority concludes that "[i]f the area was so dark that Hill could not see such a large trailer in his path, then the darkness itself presented a danger that was open and obvious." 752 So.2d at 1188. This conclusion does not recognize, as did the trial judge, that there was a question as to what conditions existed immediately before the collision, a fact question to be resolved by a jury.
Because the evidence presented a genuine issue of material fact as to whether GM negligently breached its duty of care to its invitee, Mr. Hill, the trial court properly submitted this case to the jury, and the judgment based on the jury's verdict is due to be affirmed. Therefore, I dissent.
JOHNSTONE, J., concurs.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. First, the evidence is neither conclusive nor specific that Mr. Hill had, in fact, traveled the fatal route itself while the trailer was there during his fatal shift. The evidence proves only generally that he likely traveled the route. Thus, his knowledge of the presence of the trailer was a jury question.
Second, this case is distinguishable from the total-darkness cases of Owens v. National Security of Alabama, Inc., 454 So.2d 1387 (Ala.1984), and Ex parte Industrial Distribution Services Warehouse, Inc., 709 So.2d 16 (Ala.1997), in that the circumstance in the case before us was poor lighting rather than total darkness. The open-and-obvious exception to an invitor's *1191 duty to warn depends on a "condition and risk [that are] apparent to, and would be recognized by, a reasonable person in the position of the invitee." Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158, 161 (Ala.1997). The rationale of Owens, supra, is that "[t]he condition of total darkness is sufficient to put reasonable people on notice of a substantial risk of concealed hazards." 454 So.2d at 1390. (Emphasis added.) Poor lighting, as distinguished from total darkness, does not necessarily meet the test of Mountain Top Indoor Flea Market, supra. Partial light or poor light, like that in the case before us, could mislead a reasonably prudent person into thinking he or she would be able to see and to avoid any hazards. The variable factors that make openness and obviousness a jury question under partial or poor light conditions are direction, level, color, diffusion, shadows, and like qualities of light, as well as the other physical features of the scene.
As demonstrated, the disputed issues of duty, contributory negligence, and assumption of risk were jury questions. Thus, we should not reverse, as the majority does.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, LYONS, and BROWN, JJ., concur.
COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
ENGLAND, Justice (dissenting).
I must respectfully dissent from the order overruling the appellee's application for rehearing. In the appellee's application for rehearing, she asserts that several statements of fact in the July 16, 1999 opinion are unfounded, and she notes specifically the Court's statement that Mr. Hill had traveled past the trailer at least twice before the collision. The majority states in that July 16, 1999 opinion:
"The facts show that the 25-foot flatbed trailer had been parked in that area for 12 hours before the collision and that on the day of the accident Mr. Hill had traveled past the trailer at least twice before he made the round during which the collision occurred. If the lighting was sufficient for Mr. Hill to see the trailer during the last pass, then any danger posed by the positioning of the trailer was open and obvious. If the area was so dark that Mr. Hill could not see such a large trailer in his path, then the darkness itself presented a danger that was open and obvious. Either way, because the `open and obvious' characterization is measured objectively, see Ex parte Mountain Top Indoor Flea Market, Inc., 699 So.2d 158 (Ala.1997), Mr. Hill should have known of the dangerous conditions; therefore, GM owed him no duty to warn."
752 So.2d 1188. This statement presumes, as the appellee suggests, that Mr. Hill must have gone the same route and seen the trailer on two prior occasions. The appellee correctly points out that there is no support in the record for this presumption. At best, the record would support an inference that on two prior occasions Mr. Hill had traveled in the same general area where the trailer was located, but such an inference would not mean that Mr. Hill saw or should have seen the trailer on those prior occasions. Furthermore, quoting the majority opinion, it is for the jury to determine "[i]f the lighting was sufficient for Mr. Hill to see the trailer during the last pass." 752 So.2d 1188.
The majority's July 16, 1999 opinion depends upon this Court's finding one of two possibilities: (1) that it was too dark for Mr. Hill to see the trailer in his path; or (2) that Mr. Hill had passed the trailer before and saw it when he passes it on two prior occasions. The second alternative is not supported by the evidence. The jury could have found that poor lighting, coupled with the fact that Mr. Hill had not seen the trailer before the incident, was evidence that the danger was not open and obvious.
*1192 Even if one of the possible inferences from the evidence is that Mr. Hill should have seen the trailer on prior occasions, this Court should not make such an inference, given its responsibility to view any disputed evidence in a light most favorable to the prevailing party, the appellee in this case.
The application for rehearing is due to be granted in order for this Court to address the majority's erroneous factual assertions.