173 So. 388

## LAMSON & SESSIONS BOLT CO. v. McCARTY.

### 6 Div. 952.

Supreme Court of Alabama.

March 25, 1937.

Taylor & Higgins, of Birmingham, for appellee.

Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

KNIGHT, Justice.

Suit by plaintiff to recover damages for personal injuries alleged to have been suffered by plaintiff while upon premises of defendant.

The complaint avers that plaintiff was upon premises of defendant as an invitee, and while there received his injuries as the proximate consequence of a negligent breach of duty owing by defendant to the plaintiff. Not only does the complaint

allege in terms that the plaintiff was an invitee, but it alleges sufficient facts to show that he was in fact such invitee at the time the accident and injury occurred. Therefore, the complaint showed a legal duty resting upon the defendant to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated by the invitation, and to warn the invitee of known dangers, or dangers that ought to have been known, and of which the invitee was ignorant. The complaint avers that defendant breached its duty to plaintiff by maintaining the floor in said premises, where plaintiff fell, at said time and place, in an unsafe condition for the use of invitees upon said premises.

It is true that the breach is averred in rather general language, and is but a little short of a legal conclusion, yet this is sufficient to meet the rule of our decisions. F. W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534; Shelby Iron Co. v. Morrow, 209 Ala. 116, 95 So. 370; Mobile Light & R. R. Co. v. Therrell, 205 Ala. 553, 88 So. 677.

The complaint was sufficient and not subject to any ground of defendant's demurrer. The court properly so held. Alabama Baptist Hospital Board v. Carter, 226 Ala. 109, 145 So. 443; F..W. Woolworth Co. v. Erickson, supra; Shelby Iron Co. v. Cole, 208 Ala. 657, 95 So. 47; Farmers' & Merchants' Warehouse Co. v. Perry, 218 Ala. 223, 118 So. 406; Mudd et al. v. Gray, 200 Ala. 92, 75 So. 468; Brigman v. Fiske-Carter Construction Co., 192 N.C. 791, 136 S.E. 125, 49 A.L.R. 773.

It is next insisted by the appellant that under the evidence it was entitled to the general affirmative charge.

The evidence tended to show that the appellant, defendant, had ordered from the Commercial Casting & Manufacturing Company an iron casting to be used in repairing one of its machines; that the appellee, an employee of the company was directed to deliver the casting to the defendant at its place of business in Birmingham, Ala.; that about seven in the evening on the day of the accident, and pursuant to his said instructions, the plaintiff, appellee, put the casting in his car, and drove to the defendant's place of business to make delivery to the defendant; that when plaintiff reached defendant's place of business, around 7 p. m., the gate to the fence inclosing defendant's shops and office was closed. That plaintiff drove up to this gate and was admitted by the man in charge of said gate, and who had authority to do so, and was directed to carry the casting to the machine shop, telling plaintiff that there was a man there to receive and install the casting; that plaintiff then carried the casting to the machine shop, and, on entering the shop, the plaintiff was told to put the casting on the planer; that plaintiff then started to the planer as directed, but in doing so his feet struck against, or upon a hose or tubing approximately one-half inch in diameter, and which was attached to an air compressor, but which was lying at the time upon the floor of the shop, and he was thrown to the floor of the shop, the casting falling upon his hand. One of his hands was caught between the floor and the iron casting, and was painfully bruised and injured. The casting weighed about fifty-seven pounds, and was twenty-seven or twenty-eight inches long, and one and a half inches thick by five inches in width. The plaintiff, while walking from the door to the planer, carried the casting in front of him, holding it with one hand on each end. There were a number of machines in the shop, and the evidence tended to show it was well lighted at the time. There was a place on the air compressor upon which to roll the hose or tubing which tripped plaintiff.

The testimony further tended to show that the plaintiff did not see the hose before he stepped on it.

It further appears that the defendant's shop closed about 4:30 p. m. each day, and that Mr. Dedman, the master mechanic of defendant, had notified the plaintiff's employer that deliveries would have to be made before 4:30. However, this witness testified further: "The Lamson and Sessions Bolt Company does not keep a man on the gate outside there. He don't stay at the gate. He stays up in the plant. The gate is locked, and when anybody comes to the gate he is charged with the duty of going up there and either let them in or refuse them admittance and when they come there on business, especially after the plant is closed, he is to direct them where to go, let them in at least and if he let them in they've got authority to be in the yard."

On cross-examination, the plaintiff testified in part: "There were approximately 6 or 10 machines in the machine shop. They were planer lathes, planer, saw and shears. The equipment and machinery that you see

in any machine shop or manufacturing plant of the nature of Lamson & Sessions Bolt Company. It is the same sort of layout that you generally see in a machine shop. The material all through the floor of the machine shop is composed of some kind of blocks. I think they were wooden blocks. The floor was comparatively smooth. At the point where I fell the floor apparently was in good shape. The floor was awful greasy, as customary in any machine shop. All machine shops are greasy. In my work I have been in possibly 3 or 4 machine shops in the Birmingham district."

The air compressor, and hose connecting with it, were a part of the equipment of the shop; and in regular use.

The testimony further shows that the shop was at the time well lighted by electricity, and that within a radius of twenty-five feet of the point where plaintiff fell there "were five 200 watt electric globes, all of which were lighted at said time."

We entertain no doubt but that the plaintiff, at the time he received his injuries, was an invitee upon the defendant's premises, and the first and real question to be determined is: Was the plaintiff's injury produced proximately by the negligence of the defendant in maintaining the floor in its machine shop, where plaintiff fell, in an unsafe condition for the use of invitees upon said premises?

■ This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R. R. Co., 143 Ala. 299, 39 So. 301.

This rule, as was held in the case of Farmers' & Merchants' Warehouse Co. v. Perry, supra, also includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.

■ In determining whether such care has been exercised, it is proper to consider the uses and purposes for which the property in question is primarily intended. 45 C.J. p. 829.

■ The machine shop was the private property of the defendant, used for manufacturing purposes, and was not intended as a place for the public to resort. The fact that persons did come upon the premises occasionally upon invitation, expressed or implied, to transact business, could not "beget or pervert a rule which loses sight of the fundamental uses and purposes of [the plant]." Hoyt v. Kansas City Stockyards (Mo.Sup.) 188 S.W. 106, 109.

The question here presented is quite different from that presented in the case of F. W. Woolworth Co. v. Erickson, 221 Ala. 5, 127 So. 534.

In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."

■ Of course, the mere fact that plaintiff was injured while in the shop of defendant raises no presumption of negligence, and if there was nothing in the evidence to establish negligence, save the fact of plaintiff's injury, the defendant would be entitled to the general charge.

■ The plaintiff, in entering the defendant's shop and in attempting to walk to the planer for the purpose of placing the casting on it, as he testified he was directed to do, was under duty to exercise reasonable care to conserve his own safety. Reed v. L. Hammel Dry Goods Co., 215 Ala. 494, 111 So. 237.

A careful consideration of all the evidence in the case leads us to the conclusion that the plaintiff wholly failed to meet and carry the averments of his complaint charging that his injury was produced by the negligence of the defendant. The defendant was, therefore, entitled to the general affirmative charge, and in refusing to so

instruct the jury at the written request of the defendant, the court committed reversible error.

In this view of the case, it becomes unnecessary to consider the remaining questions presented by the appeal and which relate to the refusal of certain requested charges by the defendant.

It follows, therefore, that the judgment of the circuit court must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.