182 So.2d 209

Elzada Smith McREE, as Administratrix,

v.

WOODWARD IRON COMPANY.

6 Div. 193.

Supreme Court of Alabama.

Jan. 6, 1966.

Rives, Peterson, Pettus & Conway, Birmingham, for appellant.

John H. Morrow and Bradley, Arant, Rose & White, Birmingham, for appellee.

MERRILL, Justice.

This appeal is from a judgment for the defendant, Woodward Iron Company, in a personal injury action brought by plaintiff Tom McRee. Sometime after the verdict and judgment, McRee died and the cause was revived in the name of his widow, who was also his administratrix.

The complaint charged that when the plaintiff, McRee, was injured on September 20, 1960, he was an employee of Sullivan, Long and Hagerty Construction Company, (hereinafter referred to as the construction company), which had been engaged by defendant to unload a railroad car of sand into defendant's sand house, utilizing a mobile crane at defendant's ore mine, known as Pyne Mine in Jefferson County; that the railroad car and the sand house were in close proximity to defendant's uninsulated high voltage electric power line, and while plaintiff was in the railroad car assisting in unloading the sand, some portion of the crane came in contact with the power line causing electricity to be transmitted into the car, as a proximate result of which plaintiff was injured; and that due to defendant's negligence, the place for unloading the car was highly dangerous and unsafe for unloading due to the close proximity of the uninsulated high power transmission line, exposing plaintiff to unnecessary peril and danger.

After the case was tried and judgment rendered, a motion for a new trial was heard, and while it was under advisement, plaintiff died. It was later overruled and this appeal was taken.

The first two argued assignments of error are concerned with the sustaining of objections to the following questions during the voir dire examination of the prospective jurors: (1) Q. "Now, have any of you gentlemen got a policy of liability insurance with Travelers Insurance Company?", and (2) Q. "Any of you gentlemen have a policy of insurance of any sort with Travelers?"

Travelers Insurance Company was the defendant's insurance carrier and the jurors were being questioned about their interest or connection with Travelers. We set out the proceedings relating to these rulings:

"MR. BURGE: Any member of your immediate family employed in the Claim Department of the Travelers Insurance Company?

"A JUROR: I have a policy with them.

"MR. BURGE: You have a policy with them?

"A JUROR: Yes, sir.

"MR. RIVES: This is Mister?

"A JUROR: Walter.

"MR. RIVES: You say you have a policy?

"MR. WALTER: Yes, sir.

"MR. BURGE: Does anyone else?

"A JUROR: I have a policy, too.

"MR. BURGE: I will get to the policies in just a minute, let me get the relatives. Anybody have any kinfolks that work in the Claim Department of Travelers?

"Do any of you know personally any of the employees in the Claim Department of the Travelers Insurance Company?

"Have any of you gentlemen ever been employed in the Claim Department of Travelers Insurance Company?

"Have any of you gentlemen ever been employed in the Claim Department of any firm or corporation?

"Now, have any of you gentlemen got a policy of liability insurance with Travelers Insurance Company?

"MR. MORROW: Object to that, if your Honor please.

"THE COURT: Well, I am going to sustain the objection.

"MR. BURGE: Any of you gentlemen have a policy of insurance of any sort with Travelers?

"MR. MORROW: I object to that.

"THE COURT: I sustain the objection.

"MR. BURGE: This is Mister?

"A JUROR: Joe Watson.

"MR. BURGE: Any of you gentlemen have any business contact or business dealings with the Travelers?"

It can be seen that prior to asking the question about *liability* insurance, plaintiff had already asked and received replies from two jurors that they had a policy with Travelers. Plaintiff was entitled to this information, but we cannot say that he was entitled to confine his question to a *liability* policy. And the second question to which objection was sustained had also been asked previously in the question "Does anyone else?"

■ In New York Times Company v. Sullivan, 273 Ala. 656, 144 So.2d 25, we said:

"Sec. 52, Tit. 30, Code of Alabama 1940, gives the parties a broad right to interrogate jurors as to interest or bias. This right is limited by propriety and pertinence. It is exercised within the sound discretion of the trial court. We cannot say that this discretion has been abused where similar questions have already been answered by the prospective jurors. Dyer v. State, 241 Ala. 679, 4 So.2d 311."

We cannot say that the trial court abused his discretion in his rulings and he is not subject to be reversed because (1) the question went too far when it included the word "liability", and (2) the proper question had already been asked and answered.

■ Appellant argues that the court erred in giving requested charge 22, which reads:

"I charge you, gentlemen of the jury, that a landowner is not liable to an invitee on its premises because of an injury to the invitee resulting from an open and obvious dangerous condition of which the invitee is aware or of which he should be aware in the exercise of reasonable care, and if you are reasonably satisfied from the evidence in this case that plaintiff suffered his injuries and damages as a proximate result of an open and obvi-

ous dangerous condition of which plaintiff was aware or should have been aware in the exercise of reasonable care, then your verdict must be for the defendant."

Appellant argues that "this charge leaves one confused as to whether the defendant was attempting to set out (1) a limitation on defendant's duty, (2) a contributory negligence charge, or (3) an assumption of risk charge."

As to the duty, appellant argues that the charge diminishes the statutory duty imposed in Tit. 26, § 12, Code 1940. But in Foreman v. Dorsey Trailers, 256 Ala. 253, 54 So.2d 499, we said that Tit. 26, § 12 is "a common law duty enacted by statute, section 12, Title 26, Code, * * *."

Also, charge 22 substantially follows charge E in Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412, and a statement of law quoted and approved in Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388[4]. The concluding words of charge E in Claybrooke v. Bently, supra, are " * * * and he (the owner of the premises) cannot be held liable for the death of plaintiff's intestate if the death resulted from a danger which was obvious or should have been observed in the exercise of reasonable care."

The undisputed facts are that McRee's employer, the construction company, had been performing this identical unloading operation for some six or seven years. A car of sand had to be unloaded in the sand house every one and one-half to two months, and the construction company did it under an annual contract. The work was done under the general supervision of the construction company's superintendent and he knew of the location of the high voltage wires, and Latimer, the operator of the crane on the day McRee was injured, testified that he knew about the wires, their danger and that he was watching to keep the boom out of the wires. The boom was about 35 feet long and the wires were some 31 feet from the ground.

McRee testified that he had gone with the crane to unload the sand most of the time over a period of four or five years. During the course of the unloading on the day McRee was injured, he and the crane operator, Latimer, requested an employee of defendant to move the railroad car two or three times to facilitate the unloading. Both McRee and Latimer had been to appellee's premises on many occasions to perform this same unloading operation. They went about their work without reporting in or checking with any employee at Woodward Iron Company at the mine. No employee of Woodward suggested or told Latimer and McRee where the crane should be placed to perform the unloading operation. Latimer knew from his long years of experience and his familiarity with this job where the crane should be spotted.

As they were getting the last bucket of sand out of the car, plaintiff received his electrical shock. No one knew exactly what happened but a reasonable explanation was that one of the cables or lines to the bucket broke under tension and backlashed upward and came in contact with the wires, thereby bringing the charge of electricity to the bucket which McRee was touching.

Applying the law of the case of Claybrooke v. Bently, 260 Ala. 678, 72 So. 2d 412, and Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388, to the facts here, we cannot agree that the trial court erred in giving charge 22.

The last argued assignment of error is that the court erred in giving defendant's requested written charge 11, which reads:

"I charge you, gentlemen of the jury, that if you are reasonably satisfied from the evidence that the sole proximate cause of plaintiff's injuries was negligence on the part of plaintiff's employer, Sullivan, Long & Hagerty Construction Co., or of some employee of Sullivan, Long & Hagerty Construc-

tion Co., then your verdict must be for the defendant."

Appellant argues that the charge is bad because (1) it disregards the issue of concurring negligence of Sullivan, Long and Hagerty and that of the defendant, and (2) it centers the attention of the jury on plaintiff's employer, the construction company, which was not a party to the suit. Appellant relies on our cases of Boyette v. Bradley, 211 Ala. 370, 100 So. 647; Seitz v. Heep, 243 Ala. 372, 10 So.2d 148, and Shepherd v. Johnson, 268 Ala. 69, 104 So.2d 755, which hold that a charge involving sole proximate cause should not be given when an issue of wantonness or subsequent negligence is involved because it is said that thereby initial negligence is given attention and it leads the jury to disregard the issues of wantonness or subsequent negligence.

Mr. Justice Bouldin, in Seitz v. Heep, 243 Ala. 372, 10 So.2d 148, while sustaining our holding in Boyette v. Bradley, 211 Ala. 370, 100 So. 647, relative to such charges, said: "If the matter were of first impression, this writer would treat such charge as misleading at most, and therefore, subject to refusal without error * * *." And Mr. Justice Foster, in Birmingham Electric Co. v. Carver, 255 Ala. 471, 52 So.2d 200, discussed the reasons why such a charge should not be given and said, "which this writer thinks is a farfetched conclusion."

The author of the instant opinion tends to agree with Justices Bouldin and Foster, but since this court has reaffirmed the doctrine of Boyette v. Bradley, supra, so many times, no attempt is made here to depart therefrom.

No one can successfully question the correctness of charge 11 as an abstract proposition of law. If the negligence of the construction company or some other employee of that company was the sole proximate cause of plaintiff's injuries, then the defendant did not cause them and could not be liable. This point was also noted by this court in Lindsey v. Kindt, 221 Ala. 190, 128 So.2d 139[5].

Here, we have no question of wantonness or of subsequent negligence. But appellant seeks to have us extend the rule and apply the doctrine that a sole proximate cause charge cannot properly be given when there is or was a possibility of concurrent negligence. We have had enough trouble with the question when confined to wantonness and subsequent negligence and are not disposed to extend it.

█ We hold that under the facts of this case, the charge at most was only misleading and an explanatory charge could have been requested by plaintiff to clear up any misleading tendencies. It is one of those charges which may be given or refused without becoming reversible error.

We find no reversible error.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.