Barbara R. Neese, the plaintiff in a premises-liability action, appeals from a summary judgment entered in favor of the defendant Mattie W. Rowland. We affirm.
Mattie lives with Earl Rowland, her husband of 24 years, in a home that she owns. On July 25, 1998, Earl became ill and *Page 586 
needed emergency treatment. Mattie was unable to take Earl to the hospital herself because she was caring for an invalid aunt in her home. Earl telephoned Barbara, his daughter by a prior marriage, and asked her to come and take him to the hospital. Barbara agreed to take him, drove her automobile to Mattie's residence, got out of her vehicle, and walked up the walkway that leads to the Rowlands' front door. After Earl was ready, Barbara walked him back down the walkway to her vehicle and drove him to the hospital.
After Earl was treated and released from the hospital, Barbara drove him back home; she parked her car in the driveway, next to Mattie's car. Because it had begun to rain heavily while they were at the hospital, Barbara offered to drive Earl to the pharmacy to get the medications that had been prescribed for his treatment. Earl accepted Barbara's offer and asked her to get his checkbook from the house. Barbara got out of her automobile, walked around the front end of the vehicle and up the walkway to the house and entered the front door. After Barbara was inside the house, Mattie told Barbara that Earl's checkbook was in his van. Barbara removed her shoes to keep them from getting wet and went out the front door. Mattie then remembered that she and Earl had a charge account at the pharmacy, and opened the door to tell Barbara not to worry about getting Earl's checkbook because she could charge the prescriptions. Barbara testified as follows in her deposition as to what happened next:
 "About halfway down the sidewalk I heard the door open, it seems like she may have called out my name, but I'm not going to really swear to on that either. I turned around just as I got to the mat that was upside down, and the next thing I knew I'm on the ground."
Barbara slipped on the rain-slickened underside of a doormat that was lying upside down on the walkway leading from the driveway to the house. As a consequence of her fall, Barbara suffered a bruised arm and a broken wrist with displacement, and she required medical treatment.
Barbara sued Mattie on June 18, 1999. She alleged one count of negligence, arguing that she was an invitee at Mattie's home on the day of her injuries and that Mattie had been negligent in leaving the doormat upside down in the walkway and in failing to warn her of the danger presented by its condition on the walk, i.e., lying upside down and wet with rain. Barbara's husband asserted a claim of loss of consortium. Mattie answered on July 21, 1999, denying the allegations of the complaint and asserting the affirmative defenses of contributory negligence and assumption of the risk. On February 2, 2000, Mattie filed a motion for a summary judgment, alleging that Barbara was a mere licensee on her property and that Mattie had not failed to meet any legal duty she owed Barbara while she was on the property. On March 21, 2000, Barbara filed a motion in opposition to the motion for a summary judgment, arguing that she had presented substantial evidence showing that she was an invitee on the day of the accident and that Mattie had failed to disclose the dangerous hidden condition of the doormat. On April 7, 2000, Mattie filed a reply to Barbara's motion in opposition, claiming that even if Barbara was an invitee, the condition of the doormat was "open and obvious"; it was not a hidden defect. On April 28, 2000, the motion for a summary judgment was argued before the trial judge and taken under submission. On June 9, 2000, Mattie filed an amended answer asserting as an affirmative defense that the doormat and its condition were open and obvious. Also on June 9, the trial court entered an order granting *Page 587 
Mattie's motion for a summary judgment. That order states in its entirety:
 "The court finds that the condition of the premises complained of by the Plaintiff was open and obvious and thus grants the defendant's motion for summary judgment. Cause dismissed, costs taxed to plaintiff."
Barbara filed an appeal with this Court on September 7, 2000, and we transferred the case to the Court of Civil Appeals, pursuant to §12-2-7(6), Ala. Code 1975. The Court of Civil Appeals affirmed the judgment of the trial court, without an opinion, on February 9, 2001. (No. 2991352) ___ So.2d ___ (Ala.Civ.App. 2001) (table). Barbara petitioned this Court for a writ of certiorari on February 23, 2001, and her petition was granted on April 16, 2001.
Barbara's petition for certiorari review presents five different arguments. However, this Court granted the petition to address only the following two issues: (1) whether the trial judge was precluded from considering the "open-and-obvious" defense because of Mattie's failure to present that specific phraseology until she filed her amended answer the day the trial court issued its order, and (2) whether the finding by the trial court that "the condition of the premises complained of by the plaintiff was open and obvious," upon which it expressly based its ruling, conflicts with prior decisions of this Court and of the Court of Civil Appeals. Accordingly, we consider those issues in light of the settled standard for the appellate review of a summary judgment.
 "We review a summary judgment de novo. Alabama Ins. Guar. Ass'n v. Southern Alloy Corp., 782 So.2d 203
(Ala. 2000). We apply the same standard of review as the trial court in determining whether the evidence presented to the trial court demonstrated the existence of a genuine issue of material fact. Jefferson County Comm'n v. ECO Preservation Servs., L.L.C., 788 So.2d 121 (Ala. 2000) (quoting Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988)). A summary judgment is proper where `the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P. See Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999), and Lawson State Comm. College v. First Continental Leasing Corp., 529 So.2d 926
(Ala. 1988). However, a party moving for a summary judgment always bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that it argues demonstrate the absence of a genuine issue of material fact. Id."
Northwest Florida Truss, Inc. v. Baldwin County Commission, 782 So.2d 274,276 (Ala. 2000).
 "In determining whether there is a genuine issue of material fact as to each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff (the nonmoving party) and must resolve all reasonable doubts against the defendant (the movant)."
Bechtel v. Crown Cent. Petroleum Corp., 495 So.2d 1052, 1053 (Ala. 1986), citing Autrey v. Blue Cross Blue Shield of Alabama, 481 So.2d 345
(Ala. 1985).
Barbara's first argument is that the trial court erred in basing its ruling on the "open and obvious" defense because Mattie did not raise that defense until June 9, 2000, when she amended her answer, on the same day the trial judge *Page 588 
issued his judgment. She cites Rule 56(c)(2), Ala.R.Civ.P., which states that "[t]he motion for summary judgment, with all supporting materials, including any briefs, shall be served at least ten (10) days before the time fixed for the hearing. . . ." However, our examination of the record shows that Mattie first raised the open-and-obvious defense on page 8 of her February 2, 2000, brief in support of the motion for a summary judgment, citing the following proposition and supporting cases: the defendant, as a landowner, had no duty to warn of open and obvious
defects of which the injured party should have been aware in the exercise of reasonable care. Graveman v. Wind Drift Owners' Ass'n, Inc.,607 So.2d 199, 202 (Ala. 1992); Edwards v. City of Birmingham,447 So.2d 704 (Ala. 1984). The open-and-obvious defense was also raised in Mattie's April 7, 2000, reply to Barbara's motion in opposition to a summary judgment, which also cited Graveman and Edwards, supra, at page 7 of her brief in support of that reply.
Mattie argues that because Barbara never objected to the use of the open-and-obvious defense presented in the briefs in support of the motion for summary judgment, the pleadings were amended by operation of Rule 15(b), Ala.R.Civ.P. Rule 15(b) states, in pertinent part:
 "(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. An amendment shall not be refused under subdivision (a) or (b) of this rule solely because it adds a claim or defense, changes a claim or defense, or works a complete change in parties. The Court is to be liberal in granting permission to amend when justice so requires."
Mattie cites Langston v. Bessemer Carraway Medical Center, Inc.,439 So.2d 705 (Ala.Civ.App. 1983), in which the plaintiff hospital moved for a summary judgment based on a note payable, but later amended its motion to allege monies due on an open account. The Court of Civil Appeals affirmed the summary judgment, holding that because the defendant had failed to object to the addition of the alternate theory of liability offered in the amended motion, the pleadings were amended by operation of Rule 15(b) to conform to the evidence. Mattie also cites Moody v. Rambo,727 So.2d 116 (Ala.Civ.App. 1999), in which the defendant raised the doctrine of res judicata as a defense, a defense not raised in the original answer, in his motion to dismiss the plaintiff's claims. The Court of Civil Appeals upheld the trial court's judgment, dismissing the case because the plaintiff had failed to object to the introduction of the defense and holding that the answer was deemed amended to include the res judicata defense.
The record in this case reflects that Mattie's motion for a summary judgment, *Page 589 
stating that the condition of the doormat was open and obvious, was made on February 2, 2000; that the motion was heard on April 28, 2000; and that summary judgment was entered on June 9, 2001. There is no evidence in the record that Barbara ever objected to the introduction of the open-and-obvious defense at any time before the entry of the summary judgment. In light of the foregoing authorities, we conclude that the trial court properly considered the open-and-obvious defense pursuant to Rule 15(b), Ala.R.Civ.P.
Barbara's second argument is that the trial court erred in entering the summary judgment because its finding that the condition of the doormat was open and obvious is contrary to this Court's decision in Harding v.Pierce Hardy Real Estate, 628 So.2d 461 (Ala. 1993). In Harding, this Court held that because the evidence as to whether the plaintiff was aware of the danger, had appreciated it, and had acted more carefully because of the perception of it was disputed, the determination whether the condition was open and obvious was not to be resolved on a motion for a summary judgment. Id. at 463.
We first note that Mattie concedes in her "Subsequent Reply Brief to Petition for Writ of Certiorari" that, during the summary-judgment proceedings in the trial court, she accepted Barbara's position that Barbara was an invitee at Mattie's home when she slipped and fell. The liability of a premises owner to an invitee is well settled.
 "In the definitive case of Lamson Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 (1937), this Court discussed at length the duty owed by an landowner to an invitee. At 234 Ala. 63, 173 So. 391, the Court held:
 "`This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron R.R. Co., 143 Ala. 299, 39 So. 301.
 "`This rule . . . includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.'
 "Therefore, as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court in Lamson Sessions Bolt Co., supra, at 234 Ala. 63, 173 So. 391:
 "`In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should *Page 590 
 have been observed in the exercise of reasonable care."'
 "Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala. 1979); Tice v. Tice, 361 So.2d 1051 (Ala. 1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."
Quillen v. Quillen, 388 So.2d 985, 989 (Ala. 1980).
The record reflects that Barbara had been visiting Mattie's house a few times a year for 18 years before the accident. Barbara testified that she believed that the doormat involved in her slip-and-fall case had been on the premises for 8 to 10 years and that it was usually located in front of the door. Mattie testified on deposition that the mat was as wide as the walkway and had been lying upside down on the walkway for some period, at least a day, before the accident. The record reflects that on the day of the accident Barbara crossed safely over or immediately by the doormat at least three times, first on her way into the house, second after leaving the house to take her father to the hospital, and third after she returned to the house, during what she described as a "monsoon," to find her father's checkbook. Barbara testified that on this third trip she thought that she did not cross over the doormat but she was not sure. She testified that she believed the doormat was not covering the entire width of the walkway and that she walked on the foot or so of the sidewalk that the doormat was not covering. However, she testified that she is not absolutely certain that she did not step on the doormat on the way into the house. This Court notes that the photographs contained in the record show that the doormat, lying lengthwise on the walkway, is nonetheless as wide as the walkway, leaving only one to two inches of walkway exposed on each side of the mat. Barbara's deposition reflects that during that third return trip, she went inside and removed her shoes because she was "afraid that they were probably slippery because they were so wet." She then walked outside, barefoot, and was walking across the doormat when she slipped on it and fell. Barbara testified that halfway down the walkway she heard the door open, that she may have heard her name called, but she was not sure, and that she turned around, and fell on the ground. Barbara's final statement in her deposition attributes her fall to a "combination of the wet upside-down mat and turning to see what was going on."
The upside-down doormat, lying out in the rain, constituted an open and obvious danger on Mattie's property, which Barbara, in the exercise of reasonable care, should have recognized, as a matter of law. Ex parteMountain Top Indoor Flea Market, Inc., 699 So.2d 158 (Ala. 1997) (the plaintiff was aware of the presence of loose rocks on the defendant's property and should have recognized the danger they posed). The location of the doormat on the property and the fact that it had become wet from the rain would have been as obvious to Barbara as it was to Mattie.Quillen, supra (the plaintiff, who was present on the defendant's property to help install a television antennae, was as aware of the dangerous condition of the ladder as was the defendant). We conclude, therefore, that Barbara has failed to present substantial evidence creating a genuine issue of material fact as to whether the doormat constituted a hidden defect or danger about which Mattie had such superior *Page 591 
knowledge and as to which she owed a duty to Barbara.
The judgment of the Court of Civil Appeals is affirmed.
AFFIRMED.
Moore, C.J., and See, Brown, and Stuart, JJ., concur.