HARWOOD, Justice.
On June 27, 2001, Alonzo Howard, then 14 years old, was a social guest of a tenant in the Birmingham apartment complex known as Martinbrook Apartments. Alonzo was seriously injured when while riding his bicycle in a common area of the apartment complex he fell into a large hole. He *554 and his mother, Patricia Taylor, sued Lill-co Corporation, the owner and operator of Martinbrook Apartments. Lillco then filed a motion for a summary judgment, and on August 1, 2003, the Jefferson Circuit Court granted Lillco’s motion. The court noted in its summary-judgment order that Alonzo was injured when he rode his bicycle down a grassy slope into a ditch or hole that was allegedly obscured by uncut grass. Because the parties agreed that Alonzo was an invitee on the premises, the court concluded that Lillco owed him the duty to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated or to warn him of dangers of which he was ignorant; this duty was limited to hidden defects not known to Alonzo as an invitee and that would not be reasonably discovered by him in the exercise of ordinary care. The court found that Alonzo had chosen to ride his bicycle down the grassy slope rather than to remain on the paved roadway that furnished a suitable alternate route and that he did so without properly looking where he was going. The court also found that the ditch or hole was visible and could be seen by one who was observant. The court concluded that because Lillco could not have reasonably foreseen that Alonzo would choose to ride his bicycle in an area not designed or intended for that purpose, eschewing the suitable alternate route of the paved roadway, it had no duty to warn him of the hole or ditch, even if it was not an open and obvious danger. Alonzo and his mother (“the plaintiffs”) appealed to the Alabama Court of Civil Appeals, which affirmed the trial court’s summary judgment on December 10, 2004, without an opinion. Howard v. Lillco Corp. (No. 2021116), 921 So.2d 476 (Ala.Civ.App.2004)(table). This Court granted certiorari review on February 8, 2005.
The summary-judgment record considered by the Jefferson Circuit Court, and now available to this Court, consists of several depositions, several affidavits, and 26 color photographs taken of the ditch or hole (hereinafter simply “the hole”) and other pertinent features of the apartment complex from various angles and at various distances.
Alonzo had been to Martinbrook Apartments only twice before the accident. On the date of the accident, Alonzo first visited with some friends at their apartment, accompanied them and another boy to visit another friend at her apartment at the complex, went swimming at a nearby pool with his friends, and then returned to the girl’s apartment. The girl’s apartment was located in one of several two-story multiunit apartment buildings situated in a central portion on the top of a hill that had been flattened into a broad plateau; a paved roadway and parking area surrounded the upper-outer perimeter of the buildings. The roadway descended from the top of the plateau to a lower level of the complex occupied by additional paved roadways, parking areas, and apartment buildings. The roadway joining the upper and lower levels was sufficiently wide to easily accommodate two motor vehicles traveling in opposite directions. On either side of that road were grassy embankments forming the sloping sides of the plateau. The hole was located in the embankment to the left of the roadway, as viewed from below, and was located in the steepest, most precipitous section of the embankment, being flanked on either side by more gradually sloping terrain. Photographs of the hole, particularly those in which an individual is standing close by, or even in, the hole, allow us to gauge the approximate size of the hole as being four feet wide by eight feet long and several feet deep. The hole is located at least 10 feet below the upper ledge of the hillside.
*555 A court deciding a motion for a summary judgment, or reviewing a summary-judgment motion, must accept the tendencies of the evidence most favorable to the nonmoving party and must resolve all reasonable factual doubts in favor of that party. Hollis v. City of Brighton, 885 So.2d 135, 140 (Ala.2004).
Alonzo, the only witness to testify concerning the events immediately surrounding the accident, stated that a short time after he and his friends had returned to the girl’s apartment, they decided to go to a nearby convenience store. The other boys started out on foot, leaving the apartment about three minutes before Alonzo, and he then went to retrieve his bicycle. As he was riding it on the paved roadway at the top of the hill, he saw his friends at the bottom of the hill, and he tried to catch up with them. Initially, he intended to continue on the paved roadway and travel down it to join his friends. He saw a car coming up the hill, however, and “when the car came I decided to go down the grass to the bottom of the hill.” “Like I was trying to like avoid the car that was coming up the hill.” Asked why he did not want to wait until the car had passed before continuing on the paved roadway, Alonzo testified: “It was like the time and the moment, I just went on down the hill.” He testified that he set off in a straight line toward where his friends were standing:
“A. Like I was just looking at them, and I rode down, and I just flipped over in the hole.
“Q: Okay. Did you have your eyes on them as you were going down the hill?
“A. Yes, sir.
“Q. So you didn’t see the hole because you were looking at them?
“A. Yes, sir.
“Q. Am I correct, you did not see the hole, did you?
“A. No, sir.
“Q. I guess all of a sudden you just went into a ditch or hole?
“A. Yes, sir.”
Alonzo testified that at the top of the hill there was “a whole bunch of grass” but that there was no grass at the bottom of the hill and around where he fell into the hole, “it was kind of cut too.” He estimated the height of the grass at the top of the hill as knee-high, perhaps a foot or a foot and a half tall, but testified that after he left the paved surface and started descending the grassy area of the hill, he traveled only about one foot in grass of that height.
Alonzo testified that he had seen a friend of one of his friends walking across the grassy area of the hill on the second of his two previous visits to the apartment complex but did not indicate that he had ever seen anyone riding a bicycle anywhere on the hillside. Personnel of Lillco acknowledged having seen persons on the hillside on occasion, and the vice president of Lillco acknowledged that “very rarely,” but “every once in a while you’ll see a kid run up through there” but that most children used the paved roadway to travel between the levels. The record contains no evidence indicating that any person had ever ridden a bicycle down the hillside. The vice president acknowledged that the hole is not visible from the top of the hill. Even with the height of the uncut grass depicted by the photographs taken nine days after the incident, however, the hole is readily visible from a distance of at least several feet above it, in addition to being readily visible from below and from each side.
Sherry Daniel, the tenant at whose apartment Alonzo first visited on the day of his accident, submitted an affidavit in which she stated, in part: ,
“While I was a resident of the Martin-brook Apartments, I was aware of a *556 large hole on the property. This hole was partially covered with grass on the side of a small hill. The hole was in a common area where children played. The hole is noticeable and would have been noticeable, to the person who mowed the grass, and also to management, both before and after the grass was mowed. The hole, near the central mailbox area, which tenants and management must visit each day, was a danger to anyone in the vicinity. The hole was not easily visible from the top of the hill, although it could be seen from the street or the mailboxes.”
There was testimony that the grass on the hillside was cut on a regular basis, once every one or two or three weeks.
“A landlord is expected to foresee only those dangers as would be foreseen by a reasonably prudent man under the same or similar circumstances.” Dunson v. Friedlander Realty, 369 So.2d 792, 794 (Ala.1979).
In Hancock v. Alabama Home Mortgage Co., 372 So.2d 858, 858 (Ala.1979) (“Hancock I ”), “a premises liability case involving the duty of care owed by a landlord to a tenant’s social guest when the tenant’s guest is injured in an area other than the demised premises,” the Court described the following proposition from Restatement (Second) of Torts § 360 (1965) as having “long been the rule in this State”:
“ ‘A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for physical harm caused by a dangerous condition upon that part •of the land retained in the lessor’s control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risks involved therein and could have made the condition safe.’ ”
The Court further explained that the issues for the fact-finder in such a case therefore included whether “a dangerous condition imposing an unreasonable risk exist[ed] in the area, one which could have been discovered and made safe in the exercise of reasonable care by the landlord.” 372 So.2d at 859.
In a later appeal in that case, Hancock v. Alabama Home Mortgage Co., 393 So.2d 969 (Ala.1981), the Court upheld a directed verdict in favor of the landlord defendant and against the injured social guest of the tenant, in part because there was no evidence to indicate any dangerous condition posing an “unreasonable risk.” 393 So.2d at 971.
In Marquis v. Marquis, 480 So.2d 1213, 1215 (Ala.1985), the Court explained that the duty owed an invitee by a landowner
“ ‘to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.’ ”
In Nayman v. Tracey, 599 So.2d 604 (Ala.1992), the Court reaffirmed the principles articulated in Hancock I.
In Shelton v. Boston Financial, Inc., 638 So.2d 824 (Ala.1994), a tenant was *557 injured when she slipped and fell; she was traversing a rain-slicked grassy slope, instead of using an available walkway and stairs. The four-justice plurality opinion declared:
“A landowner owes an invitee the legal duty ‘to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated by the invitation, and to warn the invitee of known dangers, or dangers that ought to have been known, and of which the invitee was ignorant.’ Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, at 62, 173 So. 388 (1937). Additionally, Restatement (Second) of Torts § 343A (1965), as relied on by this Court in Terry v. Life Ins. Co. of Georgia, 551 So.2d 385, 386 (Ala.1989), states: ‘A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.’ In order for a condition to be ‘known,’ one ‘must be aware of the existence of the condition and must appreciate the danger it involves.’ Terry, 551 So.2d at 386. However, for a condition to be ‘obvious,’ ‘the condition and risk [must be] apparent to, and [of the type that] would be recognized by, a reasonable person in the position of the invitee.’ Id.”
638 So.2d at 825 (emphasis supplied).
Given the fact that access between the lower and upper portions of the apartment complex was provided by a wide roadway close to the section of hillside Alonzo chose to descend on his bicycle and that the hillside, particularly the most precipitous stretch of it that Alonzo chose to traverse, was neither designed nor intended for bicycle traffic, and given that the hole, although not readily visible from the pavement at the top of the hill was visible upon a closer descending approach, we conclude that Alonzo’s bicycle ride down the hill was not one of “the uses contemplated by the invitation,” for which Lillco was obliged to keep the premises in a reasonably safe condition, Shelton, supra, 638 So.2d at 825, and that the hole therefore did not represent an “unreasonable” risk, Hancock, supra, 372 So.2d at 858.
Accordingly, the summary judgment in favor of Lillco is hereby affirmed.
AFFIRMED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.