THOMAS, Judge.
Matthew Waters and Vicky Waters appeal from a summary judgment entered by the Mobile Circuit Court in favor of Paul Enterprises, Inc. (“Paul”), in the Waterses’ action against Paul seeking damages for injuries Matthew sustained as a result of Paul’s alleged negligent and wanton actions in maintaining its loading dock. We reverse and remand.
On September 11, 2008, Matthew was working as a truck driver for Ace Hardware. On that date he had delivered a shipment to Paul[1] and had backed the delivery truck up to about four inches from Paul’s loading dock in order to unload the contents of the delivery truck. It is undisputed that it was Matthew’s first trip to Paul’s loading dock and that Matthew observed several Paul employees place two metal plates upon the ground to bridge the small gap between the loading dock and the delivery truck before he began to unload the contents of the delivery truck. It is also undisputed that Paul employees had been using the two metal plates to bridge the gap for several years because, the *1221 record reveals, the loading dock lever had not been operational since 2004. After watching the Paul employees place the two metal plates on the ground to bridge the gap, Matthew inquired about the usage of the metal plates and then proceeded to unload several loads of inventory from the delivery truck to the loading dock by using a “pallet jack.” However, on Matthew’s fourth or fifth trip across the metal plates he quickly changed the direction in which he was walking and the metal plates shifted and slipped out from underneath him, causing him to fall and sustain injuries. Matthew sought medical attention as the result of his injuries.
On August 19, 2009, the Waterses filed a complaint in the trial court averring that Paul and several fictitiously named parties had been negligent and wanton in maintaining Paul’s loading dock and by utilizing metal plates in lieu of maintaining a functional loading dock. The complaint also contained a loss-of-consortium claim on behalf of Vicky. On September 23, 2009, Paul answered the complaint and asserted numerous affirmative defenses. The parties conducted discovery.
On September 28, 2011, Paul filed a motion for a summary judgment. In its motion, Paul argued that the use of the metal plates to bridge the gap between the delivery truck and the loading dock was an open and obvious danger, which, it said, Matthew should have recognized in the exercise of reasonable care. It also argued that it had no superior knowledge that the metal plates could shift and, thus, that it could not have warned Matthew of such a risk. Paul attached excerpts from Matthew’s deposition to its motion for a summary judgment. On November 15, 2011, the Waterses filed a response in opposition to the summary-judgment motion. In their response, the Waterses argued that the usage of the metal plates may have been open but that there were genuine issues of material fact regarding whether the usage of the metal plates was an obvious danger. The Waterses attached the affidavit and deposition testimony of Matthew; the deposition testimony of Ralph Paul, Paul’s corporate representative; the affidavit and deposition testimony of Dr. James Dobbs, the Waterses’ expert witness; the deposition testimony of Dr. Robert Zarzour, Matthew’s treating physician; and the complaint as exhibits in support of their response.
On January 11, 2012, the trial court entered a summary judgment in favor of Paul on all the Waterses’ claims. Specifically, the trial court’s judgment states:
“[T]he Court is of the opinion that the metal plates as placed and observed by [Matthew] constituted an open and obvious condition on [Paul]’s property which [Matthew], in the exercise of reasonable care, should have recognized. Accordingly, for the reasons set forth in [Paul]’s Motion for Summary Judgment, the motion for summary judgment is hereby granted and the Court enters judgment in favor of [Paul] on all claims.”
On February 8, 2012, the Waterses filed a motion to alter, amend, or vacate the trial court’s judgment. On February 14, 2012, the trial court denied the Waterses’ postjudgment motion. The Waterses timely appealed to our supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving *1222 for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects, P.C.], 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
On appeal, the Waterses argue that the trial court erred in entering a summary judgment in favor of Paul on their claims because, they contend, there were genuine issues of matérial fact regarding whether the usage of the metal plates was an open and obvious danger. Specifically, they highlight the fact that Dr. Dobbs’s affidavit indicates that Matthew could not have appreciated the danger posed by the metal plates and that Matthew’s affidavit indicated that he “only briefly” noticed the plates and that he “did not appreciate that the plates posed any danger.” In response, Paul argues that the trial court did not err in concluding as a matter of law that the usage of the metal plates was an open and obvious danger because, it says, whether a condition is open and obvious is evaluated under an objective standard and, thus, “the question is whether the danger should have been observed, not whether in fact it was consciously appreciated.” Jones Food Co. v. Shipman, 981 So.2d 355, 362 (Ala.2006). Moreover, it again argues that the evidence indicates that it lacked any superior knowledge of the danger that caused Matthew’s injuries.
In this case, Matthew was an invitee when he began using the metal plates and loading dock at Paul’s facility. See Lam-Son & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 63, 173 So. 388, 391 (1937) (finding that a delivery driver was an invitee at the time of the accident). The well established rule is that an invitor owes a duty to an invitee to keep its premises in a reasonably safe condition and to warn an invitee of any danger about which the invitor has a superior knowledge or that is not open and obvious. Id. Specifically, in Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980), our supreme court discussed the duty an invitor owes to an invitee as follows:
“In the definitive case of Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 (1937), this Court discussed at length the duty owed by a landowner to an invitee. At 234 Ala. 63, 173 So. 391, the Court held:
“ ‘This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R.R. Co., 143 Ala. 299, 39 So. 301 [(1905)].
“ ‘This rule ... includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of *1223 which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.’
“Therefore, as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court in Lamson & Sessions Bolt Co., supra, at 234 Ala. 63, 173 So. 391:
“ Tn 45 C.J. § 244, p. 837, the rule is thus stated: “The duty to keep premises safe for invitees applies only to the defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care.” ’
“Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor’s liability rests upon his superior knowledge of the danger which causes the invitee’s injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala.1979); Tice v. Tice, 361 So.2d 1051 (Ala.1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.”
This court in Sheikh v. Lakeshore Foundation, 64 So.3d 1055, 1059 (Ala.Civ.App.2010), indicated that under Alabama law the issue whether a condition is open and obvious is analyzed under an objective standard. “[T]he focus of our premises liability law is not on the care that may have been exercised by the invitee ..., but on relieving a premises owner of a legal liability where an invitee knew of the danger that caused the injury or should have observed that danger through the exercise of reasonable care.” Ex parte Industrial Distrib. Servs. Warehouse, Inc., 709 So.2d 16, 20-21 (Ala.1997).
However, our supreme court has also stated:
“ ‘A condition is “obvious” if the risk is apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee.’ Woodward [v. Health Care Auth. of Huntsville ], 727 So.2d [814,] 816 [(Ala.Civ.App.1998) ]. ‘A condition is “known” if the invitee is aware of the existence of the condition and appreciates the danger it involves.’ Id. ‘Questions of openness and obviousness of a defect or danger and of an [invitee’s] knowledge are generally not to be resolved on a motion for summary judgment.’ Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala.1993). See also Woodward, supra. Additionally, ‘this Court has indicated that even though a defect is open and obvious, an injured invitee is not barred from recovery where the invitee, acting reasonably, did not appreciate the danger of the defect.’ Young v. La Quinta Inns, Inc., 682 So.2d 402, 404 (Ala.1996).”
Ex parte Kraatz, 775 So.2d 801, 803-04 (Ala.2000) (emphasis added).
In the present case, Paul presented evidence indicating that Matthew observed the Paul employees place two metal plates *1224 on the ground to bridge the gap between the delivery truck and the loading dock during' daylight hours, that Matthew inquired about the broken loading-dock lever and the usage of the metal plates, and that Matthew, walked across the metal plates several times during the process of unloading the delivery truck before the accident. Thus, Paul presented evidence demonstrating that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law because the undisputed evidence indicated that the usage of the metal plates was an open and obvious danger that Matthew should have observed in the exercise of reasonable care under the standard set out in Quillen, 388 So.2d at 989. Accordingly, the burden shifted to the Waterses, the nonmovants, to present substantial evidence demonstrating that there was a genuine issue of material fact regarding Paul’s duty to Matthew. See Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992).
In their response, the Waterses attached numerous exhibits. Specifically, they attached Matthew’s affidavit that states, in pertinent part:
“3. On [September 11, 2008], I had no knowledge about the loading or unloading system in place by [Paul]. When I arrived, I watched two workers put down metal plates but I did not know the precise weight, size or whether these[] metal plates were secured. I assumed that the metab plates would be secure or were safe based on the representations or actions of the workers there.
“4. I saw the plates only briefly and so did not appreciate that the plates posed any danger at the time. That is, from the time I opened the back door of my trailer and the moment it took the [Paul] workers to put the plates down and for me to see them do that, we then started unloading. It appeared that these workers had used these metal plates to bridge the gap between various trailers and the loading dock for a very long time.
“5. I assumed that these workers had used these plates for a while and that they were safe. I did not appreciate that these workers would put me in a dangerous situation, I also assumed that maybe these metal plates were somehow secure. At the time, I did not appreciate the dangerous situation this metal bridge posed for me to step or pivot on.”
Additionally, the Waterses attached Dr. Dobbs’s affidavit and deposition testimony, which indicated that, in his opinion as a professional engineer, Matthew could not have appreciated the risk and danger posed by the metal plates. Dr. Dobbs explained that his calculations had revealed that the metal plates at issue had a coefficient of friction of .33 and, thus, that they had a propensity to slide and shift when a certain type of horizontal force was applied to them, such as the force applied when Matthew abruptly changed direction. Dr. Dobbs noted that an average observer could not have appreciated the danger of the propensity of the metal plates to slide based on their coefficient of friction. Furthermore, Dr. Dobbs testified that it appeared that Paul had consistently used the metal plates as the means to bridge the gap between the delivery trucks and the loading dock without any incident, and, thus, he stated, neither Paul nor Matthew “had a reason to know that these [metal plates] could be hazardous.”
Finally, ■ the Waterses attached Ralph Paul’s .deposition testimony to their response. In his deposition, Ralph, Paul’s corporate representative, testified that Paul had been using the metal plates since 2004 and that the dock lever had not been *1225 operational throughout the time that Paul had occupied the premises. He further indicated that Paul did not have any superior knowledge of any danger associated with the usage of the metal plates at the time of Matthew’s injury.
Therefore, the Waterses presented evidence indicating that, although Matthew had observed the metal plates being placed on the ground, he did not appreciate any risk associated with the usage of the metal plates due to the Paul employees’ actions and representations on September 11, 2008. Further, they presented expert testimony via Dr. Dobbs’s affidavit and deposition indicating that Matthew could not have appreciated the risk and danger associated with the usage of the metal plates and that Paul itself was unaware of the danger associated with the usage of the metal plates. Accordingly, the evidence taken in the light most favorable to the Waterses indicated that Matthew, “acting reasonably, did not appreciate [and could not have appreciated] the danger of the defect” in this case — the usage of the metal plates. Ex parte Kraatz, 775 So.2d at 804. Thus, we conclude that the Waterses presented substantial evidence demonstrating that there was a genuine issue of material fact as to whether a danger that even Paul had not observed over the four-year period it had used the metal plates was an open and obvious danger. See Ex parte Kraatz, 775 So.2d at 804 (reversing this court’s affirmance of a summary judgment in favor of the invitor by concluding that the facts indicated that whether an unpainted speed bump was an open and obvious danger was a question for the trier of fact); and Howard v. Andy’s Store for Men, 757 So.2d 1208 (Ala.Civ.App.2000) (reversing a trial court’s summary judgment in favor of the invitor by concluding that whether the elevation of the sidewalk was an open and obvious condition was a question for the trier of fact).
Accordingly, because the Waterses presented substantial evidence indicating that Matthew did not appreciate the danger associated with the usage of the metal plates and because “the plaintiffs appreciation of the danger is, almost always, a question of fact for the determination of the [trier of fact],” F.W. Woolworth Co. v. Bradbury, 273 Ala. 392, 396, 140 So.2d 824, 827 (1962), we reverse the summary judgment in favor of Paul on the Waterses’ claims, and we remand the cause for further proceedings.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN and MOORE, JJ., concur.
PITTMAN, J., concurs in the result, without writing.

. Paul is an Ace Hardware franchisee doing business in Mobile.